THE NEW YORK JUVENILE GUARDIAN SOCIETY *against* THEODORE ROOSEVELT *et al.*

[SPECIAL TERM.]

(Decided May 3d, 1877.)

The Constitution of this State having provided in Art. I., Sec. 8, that "every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press," a court of equity has not jurisdiction to restrain the publication of libellous matter.

The New York Juvenile Guardian Society, organized under the General Act of April 12th, 1848, for the incorporation of benevolent, charitable and missionary societies—the objects of its incorporation being to provide instruction, homes, clothing, temporary board, and free Christian schools (not denominational) in destitute districts in the city of New York for neglected children,—is subject to the visitation and examination of the Board of State Commissioners of Public

The New York Juvenile Guardian Society v. Roosevelt.

Charities, in accordance with the powers and duties conferred on them by L. 1873, c. 571, § 4, in regard to any charitable, eleemosynary, correctional or reformatory institutions of this State (excepting prisons), whether receiving State aid or maintained by municipalities or otherwise.

The legality of the appointment of certain members of the Board of State Commissioners of Public Charities cannot be inquired into in an equitable action to restrain them from doing certain acts which they claim by virtue of their appointment as such commissioners to have the power to do.

The examinations and inspections made by the Board of State Commissioners of Public Charities are not in the nature of an action or proceeding against the institutions examined, and the commissioners are not obliged to conduct them according to the forms of a civil or criminal action or proceeding; the examination may be secret and not based on any specific charges, nor confined to any particular points, and the institution examined is not entitled to notice of the course the examination is to take, or to have notice of what is done, or to be present by its officers or counsel at the taking of testimony, or to cross-examine the witness produced, or to introduce witnesses.

MOTION to vacate an injunction. The facts are fully stated in the opinion.

CHARLES P. DALY, Chief Justice.—At the close of the argument in this case, I expressed my conviction that the injunction which has been granted, could not be sustained, and stated orally my conclusions upon the other questions discussed, and gave my reasons. But as the plaintiff desired that the authorities cited might be carefully examined by him, as well as by the court, and that he might submit a further brief in the case, liberty was given him to do so. His further brief has been submitted and considered, the various authorities cited have been read by me, and the result of the examination is that I have but to reiterate in a more deliberate form the views and conclusions previously expressed.

It was decided in *Brandreth* v. *Lance* (8 Paige, 24) that a court of equity has no jurisdiction to restrain the publication of a pamphlet or literary work upon the ground that its publication would be libellous, and the reason given by the chancellor was, that to assume jurisdiction in such a case or in any other case of a like nature, would be infringing upon the liberty of the press, and attempting to exercise a power of

preventive justice, which the Legislature has decided cannot be intrusted to any tribunal, consistently with the principles of a free government. The cases of *The Springhead S. Co.* v. *Riley* (E. L. R. 6, Equity cases 561), and *Dixson* v. *Holden* (7 id. 488), are English cases; and if they even went as far as is claimed, they would be no authority in this State for disregarding the decision of Chancellor Walworth in the case above cited. In the last of these cases (*Dixson* v. *Holden*), Vice-chancellor Malins undertook to qualify the well-settled rule in England, that a court of equity would not restrain by injunction the publication of a libel, by holding that it would restrain it, if the effect of the publication would, in addition to its libellous character, be injurious to property.

The propriety of any such qualification was questioned by Vice-chancellor Wickens in the subsequent case of *Mulkern* v. *Ward* (E. L. R. 13, Eq. cases 619), and was expressly overruled afterwards in *The Prudential Assurance Co.* v. *Knott* (E. L. R. 10, Chancery App. C. 142), showing that the law in England, in this respect, is substantially the same as in this State.

What is averred in the complaint, in the present case, is, that the defendants, as members or visitors of the State Board of Charities, claim the power and right to publish, or authorize to be published, the proceedings before them, in their inspection and examination, under the statute, of the affairs and conduct of the New York Juvenile Guardian Society and its officers, which examinations, it is averred, are secret and *ex parte;* from which the society or its officers are excluded, or are so conducted, as that only one officer or employee of the society could be before the defendants at any one time, and in which they exclude the society from being present by counsel, and deny their right to cross-examine the witnesses, or to produce testimony on its own behalf, or to know, except from the publication of the proceedings, what charges were made against the society or its officers; and that the publication referred to, consists of evidence, some of which is taken in the form of affidavits, and some in the form of verbal and unsworn statements, charging the society and its officers

with mismanagement of its direction and affairs; the perversion or waste of the contributions or donations received by it; the abuse of its power, or perversion of its corporate purposes and duties; and it is further averred that the testimony of the officers and employees of the society is essentially suppressed, or garbled and perverted in the publication of it; whereas, if truly reported, it would have justified the work and conduct of the society; and that the accounts of the proceedings, as published, so far as it reflects upon the society or its officers, is untrue, defamatory and libellous.

It appears from the affidavits that the investigations conducted by the defendants have been attended by reporters of the public press, and that the publications which have appeared, are of such proceedings as were taken down by the reporters and published in the respective newspapers by the proprietors of which the reporters were employed.

Conceding that this is done with the authority and assent of the defendants, and that the matter thus published is defamatory and libellous, as averred, the publication cannot be restrained by a court of equity; and those injured by such publications, if they are libellous, must seek their remedy by a civil action, or by an indictment in the criminal courts; there being no authority, in this court, as a court of equity, to restain any such publication; the exercise of any such jurisdiction being repugnant to the provision of the Constitution, which declares (art. I. § 8,) that every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the *abuse* of that right; and that no law shall be passed to restain or abridge the liberty of speech or of the press.

This applies to the temporary injunction that has been granted, which is, that the defendants be restrained from publishing any false, defamatory or libellous statements concerning the society or its officers; as well as to the more extensive relief that is asked upon the present motion, which is, that the publication of the proceedings that have taken place upon the investigation, be restrained as defamatory and libellous. The plaintiffs also ask that the defendants be

enjoined from carrying on any such investigation; or if that is denied, that they be restrained from conducting it, except in the manner pointed out in the complaint.

The plaintiffs deny that the State Board of Charities or the defendants have any visitorial power over, or in respect to the New York Juvenile Guardian Society, or any power to compel the production of its books and papers, or the attendance of its officers, employees, or other persons, for examination, or as witnesses; or if they have, that they cannot use it in the manner in which they have done; but only in open and public examinations, on due notice to the society, and with the right, on its part, to be furnished with the charges against it or its officers; to be present upon all such examinations by counsel; to cross-examine witnesses; to produce witnesses on its own behalf and generally the right to a full view and knowledge of all the proceedings as they take place.

The three defendants, Theodore Roosevelt, Henry L. Hoguet, and Josephine Shaw Lowell, are commissioners of the State Board of Charities, and the powers conferred upon such commissioners by the statute law of 1867 (L. 1867, vol. 2, p. 2396), in respect to investigating the condition, " financially and otherwise," of the charitable institutions they are authorized to visit, are of a very extensive character. Their right of visitation, and their powers and duties in connection therewith, extend to any charitable, eleemosynary, correctional, or reformatory institution of this State (excepting prisons), whether receiving State aid, or maintained by municipalities, or otherwise. (L. 1873, ch. 571, § 4.)

This embraces the plaintiff, the New York Juvenile Guardian Society, which is an institution declared by the complaint to have been organized as a corporate body, under the general act of April 12, 1848, for the incorporation of benevolent, charitable, and missionary societies. It is stated to have been originally organized, under the name of the City Missionary Society, and to have been incorporated in 1866, under its present name of the New York Juvenile Guardian Society, for the purpose of providing instruction, homes, clothing, temporary board, and free christian schools: (not

denominational) in destitute districts of this city, for neglected children. This, therefore, clearly shows one of the class of institutions over which the official authority of the defendants extends. Their authority under the act creating the State Board is, as I have said, of the most extensive nature. It embraces in respect to all such institutions, by the direct provisions of the statute, full power at all times to look into and examine their condition financially and otherwise; to examine into their methods of instruction, their government and management, the official conduct of their officers and employees, the condition of the buildings, grounds, and other property connected with them, and into all other matters pertaining to their usefulness and good management; and for this purpose, it is declared that the commissioners shall have free access to the grounds and buildings, and to all books and papers relating to such institutions. All persons connected with them are to give such information as the commissioners may require, who are authorized to administer oaths, and examine any person in relation to any matter connected with the inquiries they are empowered to make.

It is claimed that each of these defendants were, at the time of their appointment as commissioners, officers or trustees of certain charitable institutions over which the State Board of Charities exercised the powers referred to, and could not, therefore, be appointed commissioners, or exercise any of the powers pertaining to that office under the act, which declares that no trustee or other officer of any of the institutions embraced in the act, shall be eligible to the office of commissioner under it.

This is not a matter which can be inquired into in an equitable action like this. If the defendants were not eligible to the office of commissioners when appointed by the governor, and are now without authority of law exercising the duties of such an office, the remedy is by *quo warranto*, the mode prescribed by law for investigating by what authority, if any, a person exercises the powers and duties of a public office. So far, therefore, as the equitable aid of the court is asked to restrain the defendants upon this ground from assuming

to exercise any visitorial power over the Juvenile Guardian Society, the application must be denied.

The further claim of the plaintiffs that this power of visitation and investigation should be restrained by the court, unless it is exercised upon due and reasonable notice to the society, and upon specified charges served upon, or as expressed, "furnished" to the society, or its officers, and then only in an open and public manner, with the right on the part of the society to be fully informed of everything that takes place; to be represented upon such investigation, in every stage of it by counsel, with the right on the part of the society, or of the counsel employed by it, to cross-examine any witness whose testimony is taken by the defendants, and to examine witnesses on its own behalf, is equally untenable.

It is claiming that the society or its officers are entitled, upon such an investigation, to all the rights secured by the constitution and laws to a defendant in a civil action or proceeding, or to an accused person upon a criminal charge; such as a specification of the claim or charge, the right to cross-examine witnesses called to establish it, to introduce testimony in their own defense, and from the commencement to the close of the proceeding to appear by and have the aid of legal counsel. There is no foundation in such an inquiry as this, for any such claim as a matter of right. The visitorial power over charitable institutions, and the investigation into their conduct and management, authorized by this act, is in no sense analogous to a civil action or proceeding, or to a criminal accusation or charge, as it does not and cannot result in any judgment or sentence affecting person or property. All the power which the commissioners possess after instituting and completing the investigation they are authorized to make, is to embody the result of their inquiry in an annual report to the Legislature, or to make a special report to the attorney general, to the effect that, in their opinion, some matters in regard to the management or affairs of an institution, subject to their visitation, or to any inmate of it, or some person connected with it (2 L. 1867, p. 2397, § 5; L. 1873, p. 885, § 5), requires legal investigation or action of

some kind ; when it becomes the duty of the attorney general to make inquiry and take such proceedings in the premises as he may deem necessary and proper, reporting his action and the result of it to the State Board.

It is simply a preliminary inquiry that the Legislature may be annually advised of the condition, conduct, and management of institutions of this description, and that that information may be given to the attorney general that he may, in respect to the particular institution to which his attention is called, if he thinks proper, institute legal proceedings against it, by which alone can its rights or those of its officers be affected.

The manifest design of the act, establishing this board, was to create an official body to watch over the manner in which institutions devoted to charitable objects are conducted as a check against abuses by those entrusted with their management; or to prevent such bodies from being created or used under the cover of charity, as a means mainly of private emolument. For a court to hold, under such an act, that notice must first be given to the institution or its officers that an investigation was to be made, and that before it could be instituted at all, the institution was to be furnished with a specification of the charges against it, in respect to which the investigation was to be made, might defeat the very purpose of the act, which obviously is, that these bodies were to be, at all times, subject to visitation and inquiry by the commissioners of the State Board, who, from the whole scope and provisions of the act, are to keep such watchful supervision over them as to prevent the possibility of abuse arising. To hold that the commissioners are not to visit, inquire or examine into their condition at all until something has occurred that the commissioners can put into the shape of specific charges, is to deny that they have any general visitorial power at all, but are to act only when specific charges against the institution, its officers or employees can be made and tried with all the formalities, safeguards and rights that exist in proceedings where a judgment may be rendered that is obligatory upon the individual affected,

-or which may be enforced against his property, or which will subject him to punishment. Institutions that are properly conducted can have nothing to apprehend from such an inquiry into their management, as it can result only in a statement respecting them, to be made to the Legislature or to the attorney general; but if a specification of the exact nature of the investigation to be instituted must be first made, and it is to be kept within the precise limits of clearly defined and specific charges, it would be, in the case of an institution dishonestly carried on, to put the hypocritical and corrupt managers of such a benevolent trust on the alert, to devise every possible means by which to divert and embarrass inquiry, and prevent a full investigation and exposure of their dishonest stewardship.

Whilst the statute has expressed in most comprehensive terms the scope and breadth of the powers conferred upon the commissioners in the visitation and examination which they are authorized to make, it has not declared in what way it is to be conducted, or imposed any limitation or restriction in respect to it. It is left necessarily very much to the discretion of the commissioners, and although a court of equity might interpose, where there was an abuse of that discretion, to prevent manifest injustice or intolerable oppression, it is very clear to my mind that it should not impose any such obligation as is sought to be imposed by this action. If, in the opinion of the commissioners, it is more desirable to examine the witnesses separate and apart from each other when taking their testimony, the commissioners have the right to do so. This is sometimes granted by the judge in the trial of a cause, and especially in criminal cases, where, in his opinion, it will subserve the ends of justice.

It is also in the discretion of the commissioners whether or not they will allow the society to appear before them by counsel. The right to appear by and have the aid of counsel, as recognized in modern times, and secured in some States by constitutional or legislative enactments, is in the prosecution or defense of some proceeding in a court of justice, or before a legislative body, in proceedings for breach

of privilege, contempt, the right of a member to his seat, im-peachments, or any of the offences cognizable before such a body where punishment may be inflicted. (See on the history of this right, Cooley's Constitutional Limitations, p. 230; Forsyth's Hortensius, chap. VIII.; Hawkins' Pleas of the Crown, b. II. c. 139; 5 State Trials, 466, *note;* Cushing's Laws and Practice of Legislative Assemblies, part III. c. 4 and sections 667 and 1035.)

By the Revised Statutes, vol. 2, p. 285, " every person of full age and sound mind may appear by attorney or solicitor, as the case may require, in every action or plea, by or against him in any court;" and by the Bill of Rights (Const. art. I. § 6), " in any court whatever, the party accused shall be allowed to appear and defend in person, as in civil actions." But this is not an action or proceeding in court. It is not, and was not intended to be a judicial investigation. It is a mere preliminary inquiry which may lead to a judicial investigation, but that is all, and it may be conducted in a summary way and in such a manner as the commissioners deem most judicious and best designed to attain the object which the statute has in view.

Injunction vacated.*

---

* All parties having acquiesced in the correctness of the decision, no appeal was taken.