Rubel v. Allegretti Chocolate Cream Co.

---

## B. F. Rubel et al. v. Allegretti Chocolate Cream Co.

1.   TRADE-MARKS—*Allegretti—Chocolate Creams.*—If a person makes use of his own name as a trade-mark, and then transfers to another the business in which his name has been so used, the right to continue the use of the name will follow the business, as often as it may be transferred.

2.   SAME.—*Assignment of Trade-marks and Trade-names.*—An assignment of the property and effects of a business carries with it exclusive right to use such trade-marks and trade-names as have been used in such business; they attach to the business or right of manufacture and pass with it.

3.   SAME—*Right to Use or Assimilate the Name of Another.*—One firm is not at liberty to so use or assimilate the name of another firm or corporation as to pass off themselves for that other, or their goods for the goods of that other.

4.   SAME—*Interference by Injunction.*—In order to authorize the interference of chancery it is not necessary that a trade-mark should be copied with the fullest accuracy.  An imitation, which varies from the original in some particulars, may be restrained if it is calculated to deceive and may be taken for the original.

Bill for Injunction, to restrain the use of a trade-name.   Trial in the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding.   Hearing and decree for complainant.   Appeal by defendant.   Heard in this court at the March term, 1898.   Affirmed.   Opinion filed May 31, 1898.

STATEMENT.

The final decree entered in this cause by the court below is as follows:

" This case coming on to be heard on the bill of complaint herein, answer of defendants and complainant's replication thereto, the court—having heard the evidence adduced by complainant and defendants, and arguments of counsel, and being fully advised in the premises—doth find that the equities of said bill are with the complainant; that complainant has full right and title to the use of the name or word ' Allegretti,' as alleged in said bill; that the material allegations in said bill are true.

It is therefore ordered, adjudged and decreed by the court that said defendants, B. F. Rubel, I. A. Rubel and Giacomo Allegretti, and each of them, their agents, servants, attorneys, representatives or assigns, be perpetually enjoined and restrained from using the name ' Allegretti ' or ' Allegretti & Co.' in the sale of chocolate creams and confectionery in the county of Cook aforesaid, except when such use is coupled with words clearly indicating that such goods were manufactured and are sold by B. F. Rubel, I. A. Rubel and Giacomo Allegretti, and not by Ignazio Allegretti or the Allegretti Chocolate Cream Company, and that said complainant do have judgment herein for its costs in this proceeding, to be taxed by the clerk."

For some twenty-five years one Ignazio Allegretti has been manufacturing and selling confections in different cities in the United States. Since 1880 he has been manufacturing and selling what have during that time been called " Allegretti Chocolate Creams." He came to Chicago just prior to the World's Columbian Exposition, where he has continued in that business since 1892. In November, 1894, he took two of his sons into business with himself under the firm name of Allegretti Brothers. That firm continued the business until November 10, 1896, when the appellee succeeded to and has since continued the same business. Said Ignazio and his two sons, composing the firm of Allegretti Bros., are the only stockholders, and the

only persons interested in the Allegretti Chocolate Cream Co., the appellee, an Illinois corporation. The appellee succeeded to, and continued the business theretofore conducted by Allegretti Bros. Said Ignazio Allegretti, and said Allegretti Bros., and said Allegretti Chocolate Cream Company, are the only parties who ever made and sold, under that name, Allegretti Chocolate Creams in the United States except appellants, as hereinafter stated. Said parties have successively sold such creams, not only in Chicago, but in New York City and throughout this country and in Europe.

Appellant Giacomo Allegretti is a nephew of Ignazio; came to this country from Italy in 1891; has been in the employ of said Ignazio and his firm most of the time since, and had been in the employ of said Allegretti Bros. over a year next prior to August 18, 1896, when he left them. At that time said firm was located at 131 Wabash avenue, Chicago. Seven days thereafter, on the 25th day of August, 1896, there appeared in the columns of the Chicago Daily News the following advertisement:

" Originator and sole possessor of the genuine process for manufacturing Allegretti's chocolate creams. I wish partner with capital and services to start and push the business to its utmost capacity. Address D 72, Daily News."

A few days after the publication of the above, appellant Giacomo Allegretti appeared at the hardware store of the other appellants at 77 Lake street, Chicago. Appellant I. A. Rubel says that Giacomo came there to rent a place, and said he wanted a partner; that he could make very fine chocolate creams. I. A. Rubel testifies thus : " I told him I would go in with him if what he stated were the facts. So he rigged up a place on the fourth floor of 77 Lake street, and put in a stove and other things necessary for making candy, and the candy turned out very nice, and we formed a copartnership."

The appellant B. F. Rubel says that at the time the partnership was formed he and his brother knew of the existence of the firm of Allegretti Bros., and that they first

satisfied themselves that Giacomo " was the gentleman he represented himself to be."

Giacomo informed the Rubels before they became partners that he had worked for the other Allegrettis, and stated that while working there he had improved upon the making of the chocolate creams. September 5th, I. A. Rubel went to the place where Allegretti Bros. procured chocolate, and inquired for and purchased some of the same kind of chocolate used by them. This was used by Giacomo in making the sample batch at Rubel's store, 77 Lake street. I. A. Rubel had before that time purchased Allegretti chocolate creams. While negotiating with Giacomo he went to the Allegretti Wabash avenue store, and asked if they sold 200 pounds per day, and was told by Joseph Allegretti that they sold that amount in the morning.

The appellants entered into their partnership agreement September 12, 1896. Appellant Giacomo contributed nothing to the capital of that firm except, as stated, " his name " and " his experience." The capital was all contributed by the Rubels. The profits were to be divided equally between the three. The firm name agreed upon was " Allegretti & Co." I. A. Rubel says that they did not adopt the firm name of Rubel & Co., or Allegretti & Rubel, " because we did not want to; we simply wanted it Allegretti & Company."

September 22d, appellants opened a store at 161 State street, and commenced the sale of Allegretti chocolate creams. That store is in the same block fronting State street that the Allegretti store was in fronting Wabash avenue (No. 131). Appellants used the same kind of lettering on their show windows, and displayed the chocolate creams in the same style and shapes as appeared at the store, 131 Wabash avenue. They purchased some of their chocolate of the same kind and at the same place, used similar boxes and labels, shipped in the same kind of packing boxes as those used by Allegretti Bros. They were not only selling Allegretti chocolate creams at retail in Chicago, but they were selling them at wholesale, and shipping them

to New York and other places, using, in so doing, similar boxes, labels and packing boxes to those which had been used by Ignazio Allegretti and Allegretti Bros., and were being used by the Allegretti Chocolate Cream Co., appellee, when this bill of complaint was filed.

CLYDE E. MARSH, attorney for appellants; Dow, WALKER & WALKER, of counsel.

An examination of the following and kindred cases wherein the use of a person's name has been regulated, will show that in most instances conscious, intentional, 'fraudulent misrepresentation on the part of the defendant has been resorted to; in others there was such a combined use of the name with other marks, characters, figures, or form and arrangement of circulars, advertisements, etc., as to amount to a false representation, and the combination only was enjoined. No instance can be found where the use of the name only, in good faith, has been stopped. See Croft v. Day, 7 Beavan, 84; Holloway v. Holloway, 13 Beavan, 213; Clark v. Clark, 25 Barb. (N. Y.) 78; Sykes v. Sykes, 3 Barn. & Cress. 541; Metzler v. Wood, L. R., 8 Ch. Div. 179; Devlin v. Devlin, 69 N. Y. 214; Landreth v. Landreth, 22 Fed. Rep. 41; Shaver v. Shaver, 54 Iowa, 213; Stonebraker v. Stonebraker, 33 Md. 268; Williams v. Brooks, 50 Conn. 278; Meriden Britannia Co. v. Parker, 39 Conn. 450.

Upon the other hand there has been, from the first to the present time, a general concensus of judicial opinion that the use of a personal name in a fair, honest and ordinary business manner, could not be prevented, even if damage resulted therefrom. Croft v. Day, 7 Beavan, 84; Holloway v. Holloway, 13 Id. 213; Burgess v. Burgess, 3 De Gex, M. & G. 896; Faber v. Faber, 49 Barb. (N. Y.) 357; Clark v. Clark, 25 Id. 80 ; Meneely v. Meneely, 62 N. Y. 427; Comstock v. Moore, 18 How. Pr. 424; Gilman v. Hunnewell, 122 Mass. 139; McLean v. Fleming, 96 U. S. 252; Carmichel v. Latimer, 11 R. I. 395; Landreth v. Landreth, 22 Fed. Rep. 41; Singer Mfg. Co. v. Long, L. R., 18 Ch. Div. 412.

MORAN, KRAUS & MAYER, also of counsel.

Every man has an absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Where the only confusion results from the similarity of names, the courts will not interfere. Opinion of Rapallo, J., in Meneely v. Meneely, 62 N. Y. 427.

A manufacturer has a right to attach his own name to his manufactures, even though a rival manufacturer of the same name, who has given it prestige in the market, may suffer in consequence. The resulting damage is *damnum absque injuria.* Carmichel v. Latimer, 11 R. I. 395. See also Decker v. Decker, 52 How. Pr. (N. Y.) 218.

"A person may have a right in his own name as a trade mark as against a person of a different name. But he can not have such a right as against a person of the same name, unless the defendant uses a form of stamp or label so like that used by the plaintiff as to represent that the defendant's goods are of the plaintiff's manufacture." Gilman v. Hunnewell, 122 Mass. 139.

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property; if such use be a reasonable, honest and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by reason of necessary excavations upon his own land. These and similar instances of cases are *damnum absque injuria.*" Brown Chemical Company v. Meyer, 139 U. S. 542.

DOUGLAS C. GREGG, attorney for appellee; DARROW, THOMAS & THOMPSON, of counsel.

MR. JUSTICE HORTON, after giving the foregoing statement, delivered the opinion of the court.

The contest in this case arises as to the use, and the right

to the use, of the name "Allegretti" in connection with the manufacture and sale of chocolate cream candy. No point or suggestion is made in the briefs or arguments of counsel as to the phraseology of the restraining decree quoted. The case is presented upon the broad question that appellants have a right, as against appellee, to use the firm name "Allegretti & Co." in just the manner they have been and are using it.

Appellants contend that appellee can not maintain its bill of complaint filed in this case, because (1) no right exists in any one such as to justify the entry of said decree; and (2) if any such right ever existed, it never passed to appellee.

It is not necessary for the purposes of this case to determine whether the right contended for by appellee be a trade-mark, or trade-name, or good will, or by what name such right be designated. The important inquiry is, did the alleged right exist in the appellee when its bill was filed? There is no testimony showing that Allegretti Bros. executed and delivered to appellee any formal assignment or transfer of the right claimed. But no such formal transfer is necessary to vest the right in appellee if such right existed in Allegretti Bros.

In Snyder Mfg. Co. v. Snyder, 54 O. St. 86, 97, the Supreme Court, quoting from Horton Mfg. Co. v. Horton Mfg. Co., 18 Fed. Rep. 816, states the rule thus: "If one has made of his own name a trade-mark, and then transfers to another his business, in which his name has been so used, the right to continue such use of the name will doubtless follow the business as often as it may be transferred."

In Williams v. Farrand, 88 Mich. 473, 480, it is held "that an assignment of all the stock, property and effects of a business * * * carries with it the exclusive right to use * * * such trade-marks and trade-names as have been in use in such business. These incidents attach to the business or right of manufacture and pass with it. Courts have uniformly held that a trade-mark has no separate existence; that there is no property in words, as detached from the thing to which they are applied; and that a conveyance

of the thing to which it is attached carries with it the name."

In the case of Fish Bros. Wagon Co. v. La Belle Wagon Works, 82 Wis. 546, the business of the firm of Fish Bros., wagon manufacturers at Racine, together with all the property and assets, passed to Fish Bros. & Co., agents; thence into the hands of a receiver; thence to the Fish Bros. Wagon Co., a corporation. The Fish brothers remained in the business through the successive changes and became officers of the corporation, although the majority of the stock was owned by others. During all this time the wagons were marked " Fish Bros." " Fish Bros. & Co., Agents," or " Fish Wagons," or with a picture of a fish on which were the words " Bros.," " Bros. & Co." or " Wagon," and were advertised under those names and with a picture. Several years after the organization of the corporation the Fish brothers withdrew therefrom and formed a partnership to manufacture and deal in wagons in another place, under the name of Fish Bros. & Co. In an action against them by the corporation it is held that the latter had acquired the good will of the original business and the right to use the said names and pictures as trade-marks, although the same were not specifically mentioned in any of the transfers of the business to the corporation

In the case of Merry v. Hoopes, 111 N. Y. 415, it is held that where, upon the dissolution of a firm, one of the partners purchases and succeeds to the business of the firm, the exclusive right to use trade-marks belonging to the firm passes to the purchaser, although no express mention is made of them in the deed of assignment.

There was no express assignment in Feder v. Benkert, 18 U. S. Cir. Ct. Appeals, 549, yet it was there held that the trade-mark passed to the several successors, although no one originally connected with the firm had any longer any interest therein.

In the case at bar the same persons, Ignazio Allegretti and his two sons who composed the firm of Allegretti Bros., own all the capital stock of the appellee. The same per-

Rubel v. Allegretti Chocolate Cream Co.

sons continue the same business in the same manner. The material inquiry upon this branch of the case is whether any such right as the appellee contends for ever passed from Allegretti Bros. to appellee, not when it passed. If Allegretti Bros. had such a right that they could have maintained this suit in case the appellee had not succeeded to their business, then the appellee may maintain the suit, notwithstanding the fact that it succeeded to such right after appellants had commenced business. The fact, if it be a fact, that they had commenced pirating before appellee succeeded to the business, does not justify its continuance afterward.

The further question is whether appellants are so using the firm name "Allegretti & Co." as to justify the intervention of a court of equity by injunction.

One firm is not at liberty to so use or assimilate the name of another firm, or of a corporation, as to pass off themselves for that other, or their goods for the goods of that other.

The law is very tersely and clearly stated by Beck, J., speaking for the Supreme Court in Shaver v. Shaver, 54 Ia. 208, 211, thus: "In order to authorize the interference of chancery it is not necessary that the trade-mark should be copied with the fullest accuracy. An imitation which varies from the original, in some particulars, may be restrained. The rule is, that if the imitation is calculated to deceive, and may be taken for the original, its use will be restrained."

In Lee v. Haley, 5 Ch. Appeal Cases, 155, the complainants, who were and for some years had been doing business as coal dealers in Pall Mall, London, under the name "The Guinea Coal Company," sought to restrain the defendant from doing the same kind of business on the same street, under the name "The Pall Mall Guinea Coal Company." A number of other companies who called themselves Guinea Coal Companies, some with prefixes and others with no prefixes, were engaged in the same business in the same city. In sustaining the interlocutory restraining order entered by

the vice-chancellor, Sir G. M. Gifford, L. J., said (p. 161):
" I quite agree that they have no property in the name, but
the principle upon which the cases on this subject proceeds
is, not that there is property in the word, but that it is a
fraud on a person who has established a trade, and carried
it on under a given name, that some other person should
assume the same name, or the same name with a slight altera-
tion, in such a way as to induce persons to deal with him in
the belief that they are dealing with a person who has given
a reputation to the name."

The rule as above stated seems to be the well settled law.
Russia Cement Co. v. Le Page, 147 Mass. 206; Fish Bros.
Wagon Co. v. La Belle Wagon Works, *supra;* Shaver v.
Shaver, *supra;* Higgins Co. v. Higgins Soap Co., 144 N. Y.
462.

Do the facts in this case show that this rule should be
applied as against appellants? We think they do. It
hardly seems probable that any one familiar with the facts
would contend otherwise as to Giacomo Allegretti. Only
seven days after he left the employ of Allegretti Bros., he
advertised in the public press that he was the " originator
and sole possessor of the genuine process for manufacturing
Allegretti chocolate creams." It would be idle to attempt
to argue that this was not calculated and intended to
deceive.

Within a few days Giacomo was making a batch of choco-
late creams in a loft of the hardware store of the other
appellants, where temporary arrangements were made for
that purpose. The other appellants also made inquiry to
satisfy themselves as to whether Giacomo " was the gentle-
man he represented himself to be." They were familiar
with the Allegretti chocolate creams, and one of them
even went to the place of business of Allegretti Bros., and
inquired as to the amount of their sales. In less than twenty
days after said advertisement appeared, appellants had
formed their partnership under the firm name " Allegretti
& Co.," and within the next ten days thereafter they had
rented a store on the principal retail business street in this

city, fitted it up for occupancy, procured the necessary utensils for manufacturing, procured the necessary boxes, printing, etc., and entered upon the manufacture and sale of Allegretti chocolate creams.    The letters upon their windows were the same kind as those used on the windows of Allegretti Bros., and the chocolate creams displayed had the same general appearance.    The boxes in which the creams were put were very similar.    The lettering upon the boxes has a great similarity.    The words "Allegretti" and "Chocolate Creams" are displayed in gilt as the prominent and principal words.    They are upon heavy and highly glazed paper, as were those of Allegretti Bros.

And then, why was the name Allegretti used as the only one appearing in the firm name?    The answer given by the Rubels, when on the witness stand, was that they used this name "because they wanted to."    This is a peculiar, or at least an uncommon name in this country.    We are impressed with the firm conviction that if Giacomo Allegretti had been known by some familiar name not connected with the particular kind of business that his firm was about to enter upon, his name would not have been the only name used to designate the firm.    The similarity shown by this record is so great as to compel the conclusion that it could only exist as the result of design and intent.    "Similarity, not identity, is the usual recourse where one party seeks to benefit himself by the good name of another."

The decree of the Superior Court is affirmed.