### Allegretti Chocolate Cream Co. et al. v. B. F. Rubel et al.

1. LIBELS—*Injunction to Restrain the Publication of.*—A court of chancery will not interfere by injunction to restrain the publication of a libel.

2. INJUNCTIONS—*Equity Jurisdiction to Restrain Libels.*—A court of equity can not, under its common law powers, by injunction, restrain the publication of a mere libel.

**Bill for Injunction.**—Trial in the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Decree for complainants; appeal by defendants. Heard in the Branch Appellate Court at the October term, 1898. Reversed and remanded. Opinion filed July 11, 1899.

DARROW, THOMAS & THOMPSON, and DOUGLAS C. GREGG, attorneys for appellants.

That a court of equity can not, under its common law powers, by injunction, restrain the publication of a mere libel, seems to be most in accordance with the authorities in this country, as well as in England. Boston Dietite Co. v. Florence Mfg. Co., 114 Mass. 69; Newell on Libel and Slander (2d Ed.), 246*a*, 246*b;* High on Injunctions, Sections 1015–1093; Whitehead v. Kitson, 119 Mass. 484; Life Association of America v. Boogher, 3 Mo. App. 173; Baltimore Car Wheel Co. v. Bemis, 29 Fed. Rep. 95; Mauger v. Dick, 55 How. Pr. 132; Singer Mfg. Co. v. Domestic Sewing Machine Co., 49 Ga. 70.

In the absence of statutory provision conferring such jurisdiction, the question is so fully and clearly discussed in the leading decisions that we no more than cite them : Pru-

dential Assurance Co. v. Knott, L. R., 10 Ch. 142; Boston Dietite Co. v. Florence Manufacturing Co., 114 Mass. 69; Kidd v. Horry, 28 Fed. Rep. 773; Everett Piano Co. v. Bent, 60 Ill. App. 372.    See also Clark v. Freeman, 11 Beavan Rep. 112; Flint v. Hutchinson Smoke Burner Co., 110 Mo. 492; Baltimore Car Wheel Co. v. Bemis, 29 Fed. Rep. 95; Dicks v. Brooks, L. R., 15 Ch. Div. 22–29; Halsey v. Brotherhood, L. R., 19 Ch. Div. 386; Whitehead v. Kitson, 119 Mass. 484; N. Y. Juvenile, etc., Society v. Roosevelt, 7 Daly, 188; Brandreth v. Lance, 8 Paige, 24; Mauger v. Dick, 55 How. Pr. 132; Caswell v. Central R. R. Co., 50 Ga. 70; Life Ass'n of America v. Boogher, 3 Mo. App. 173; Singer Co. v. Domestic Co., 49 Ga. 70; Raymond v. Russell, 143 Mass. 295; De Wick v. Dobson, 46 N. Y. Supp.; Reyes v. Middleton, 29 L. R. A. 66–68; Mead v. Stirling, 62 Conn. 586.

The recent English cases, such as Dixon v. Holden, L. R., 7 Eq. 488; Thorley's Cattle Food Co. v. Massan, 14 Ch. Div. 763; Thomas v. Williams, Id. 864, and Loog v. Bean, 26 Ch. Div. 306, depend on certain peculiar acts of Parliament of Great Britain and not on the general principle of equity jurisprudence.

So it may be regarded as well settled that a court of equity will never lend its aid by injunction to restrain the libeling or slandering of title to property where there is no breach of trust or contract involved, but that in such cases the remedy, if any, is at law, and that the alleged insolvency of the libelant in such cases will not of itself authorize the interference of a court of equity.    Boston Dietite Co. v. Florence Mfg. Co., 114 Mass. 69; Wetmore v. Scovell, 3 Edward's Ch. (N. Y.) 523; Brandreth v. Lance, 8 Paige, 24; Mauger v. Dick, 55 How. Pr. 132; Life Ass'n of America v. Boogher, 3 Mo. App. 173; Singer Mfg. Co. v. Domestic Sewing Machine Co., 49 Ga. 70; Clark v. Freeman, 11 Beavan, 112; Seeley v. Fisher, 11 Sim. 581; Prudential Assurance Co. v. Knott, L. R., 10 Ch. App. 142.

CLYDE E. MARSH, attorney for appellees, Dow, WALKER & WALKER, of counsel, contended that inasmuch as the

appellant and its officers have submitted this cause to the court and the court has passed on the respective rights of the parties and entered a decree fixing the manner in which the firm name of Allegretti & Rubel should be used, and that the court has also passed on the question affirmatively that Allegretti & Rubel are using their firm name in compliance with the decree of June 1, 1897, all of which is set out in the bill of complaint, the publication and distribution of the circular complained of, by reason of the fact that the original case is at an end and the court has lost jurisdiction to enter any orders therein, should be enjoined as a trade libel and as unfair competition in the suit at bar, and appellees rely on the following cases: William Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co., 11 Fed. Rep. 495; Emack v. Kane et al., 34 Fed. Rep. 46; Grand Rapids School Furniture Co. v. The Haney School Furniture Co. et al., 92 Mich. 558; White v. Mellin, 64 L. J. Rep. (N. S.), 308; Bell & Company v. The Singer Mfg. Co., 65 Ga. 452; Collard v. Marshall, Vol. 1, Law Reports, 1892 (Chan. Div.) 571; Thorley's Food for Cattle Company v. Massam, 41 Law T. Rep. (N. S.), 543; J. W. Thorley Cattle Food Company v. Massam, 42 Law T. Rep. (N. S.) 851.

MR. JUSTICE HORTON delivered the opinion of the court.

January 16, 1899, a bill in chancery was filed in the Superior Court by appellees, praying for an injunction restraining appellants from issuing and sending out the circular hereinafter quoted. January 17, 1899, the Superior Court entered an order granting a temporary injunction restraining appellants from " issuing, circulating, uttering and distributing " said circular. Said bill states that said circular is in the words and figures following, to wit:

" ORIGINAL
TRADE (ALLEGRETTI) MARK.
FRAUDS AND PIRATES.

The Supreme Court, in an opinion just handed down (December 21st), affirming the decisions of the Superior and Appellate Courts, holds that B. F. Rubel, I. A. Rubel and Giacomo Allegretti, who compose the firm known as ' Alle-

gretti & Rubel ' are guilty of fraud and deception in pirating our business.

The Supreme Court, in its opinion, said :

' From a careful examination of the whole record we think the chancellor below and the Appellate Court were amply justified in their finding.'

The Appellate Court said, which is affirmed by the Supreme Court, as above :

' The similarity shown by this record is so great as to compel the conclusion that it could only exist as the result of design and intent.'

In speaking of Giacomo Allegretti, Rubel's stool pigeon said :

' Only seven days after he left the employ of Allegretti Brothers (our predecessors), he advertised in the public press that he was the originator and sole possessor of the genuine process for manufacturing Allegretti chocolate creams. It would be idle to argue that this was not calculated and intended to deceive.'

The Supreme Court winds up its decision by saying :

' Fraud and deception having been practiced by appellants, as shown by the facts and findings herein, we are satisfied the decree of the court is not too far reaching.'

As found by three courts, and the highest in the State, B. F. Rubel, I. A. Rubel and Giacomo Allegretti are pirates and frauds, who have endeavored to steal our business and to trade upon our good name by imitating our business in every way.

We warn all people who care for honesty, against dealing with them.

Yours respectfully,
Allegretti Chocolate Cream Company,
159 State St., Chicago.

927 Broadway, New York."

It is not necessary to recite at length the facts out of which the litigation between these parties has arisen. This court is familiar with them. In the main they will be found in Allegretti et al. v. The Allegretti Chocolate Cream Co., 177 Ill. 129, and Rubel et al. v. same, 76 Ill. App. 581.

In the bill in the case at bar it is stated that appellants changed their firm name July 18, 1898, from Allegretti & Co. to Allegretti & Rubel, and use the individual names of appellants as directed by the decree which was affirmed in

177 Ill. 129.   There is now no question before this court as
to whether appellees are now conducting their business in
such manner as that appellants have no ground of complaint.
Neither is the question now presented, as to whether the
circular set out in this bill of complaint is in law libel-
ous.   But we are called upon to decide whether a court of
equity will entertain jurisdiction and enjoin the distribution
of that circular.

The statement in said circular as to what has been decided
by the courts, and the quotations from the opinions of the
Supreme Court and this court, are substantially correct.   It
contains no threat, no attempt to intimidate.   Outside of
statements as to what it is there claimed the courts had de-
cided, and of said quotations, there is but one assertion, viz.:
" We warn all people who care for honesty against dealing
with them " (appellees).   It is not for us now to express an
opinion as to whether this circular is libelous, so that a suit
at law may be maintained to recover damages for its circu-
lation.

It can not be said that the cases bearing upon this ques-
tion are in entire accord.   A careful examination of them
will, however, dispel most of the apparent conflicts.   The
case of Kidd v. Horry, 28 Fed. Rep. 773, is very similar to
the case at bar.   That case was in the Eastern District of
Pennsylvania.   The opinion is by the late Mr. Justice Brad-
ley of the Supreme Court of the United States, and was
handed down October 9, 1886.   The application in that case
is stated by Mr. Justice Bradley as follows (p. 774) :

" We are asked to grant an injunction in this case to
restrain the defendants from publishing certain circular let-
ters which are alleged to be libels and injurious to patent
rights and business of the complainants, and from making
or uttering libelous or slanderous statements, written or
oral, of or concerning the business of complainants, or con-
cerning the validity of their letters patent, or of their title
thereto, pending the trial and adjudication of the principal
suit which is brought to restrain the infringement of said
patent.   The application seems to be altogether a novel
one, and is urged principally upon a line of recent English
authorities, such as Dixon v. Holden, L. R., 7 Eq. 488;

Thorley's Cattle Food Co. v. Massan, 14 Ch. Div. 763; Thomas v. Williams, Id. 864, and Loog v. Bean, 26 Ch. Div. 306. An examination of these and other cases relied on convinces us that they depend on certain peculiar acts of Parliament of Great Britain, and not on the general principle of equity jurisprudence."

After discussing several English acts and cases, the court proceeds thus (p. 775):

" But neither the statute law of this country nor any well considered judgment of the courts has introduced this new branch of equity into our jurisprudence. There may be a case or two looking that way, but none that we deem of sufficient authority to justify us in assuming this jurisdiction. The authority of the Supreme Court of Massachusetts in the cases of Boston Dietite Co. v. Florence Mfg. Co., 114 Mass. 69, and Whitehead v. Kitson, 119 Mass. 484, is flatly against it. So also are the New York cases of N. Y. Juvenile, etc., Society v. Roosevelt, 7 Daly, 188; Brandreth v. Lance, 8 Paige, 24; Mayer v. Dick, 55 How. Pr. 132; also the Georgia case of Caswell v. Central R. Co., 50 Ga. 70, and the Missouri case of Life Ass'n of America v. Boogher, 3 Mo. App. 173. We do not regard the contrary decision in Croft v. Richardson, 59 How. Pr. 356, as of sufficient authority to counteract these cases or disturb what we consider to be the well established law on the subject. That law clearly is that the court of chancery will not interfere by injunction to restrain the publication of a libel, as was distinctly laid down by Lord Chancellor Cairns in the case of Prudential Assur. Co. v. Knott, 10 Ch. App. 142, where he says in reference to the application for an injunction to restrain a libel calculated to injure property : ' Not merely is there no authority for this application, but the books afford repeated instances of the refusal to exercise jurisdiction;' and then refers to several authorities. If this decision has since been overruled, it is only because of the enlarged jurisdiction conferred upon the English courts by the statutes referred to, and is a standing authority as to the general law, independent of legislation. We do not think that the existence of malice in publishing a libel or uttering slanderous words can make any difference in the jurisdiction of the court. Malice is charged in almost every case of libel, and no cases of authority can be found, we think, independent of statute, in which the power to issue an injunction to restrain a libel or slanderous words, has ever been maintained, whether malice was charged or not. Charges

of slander are peculiarly adapted to and require trial by jury; and exercising as we do, authority under a system of government and law, which by a fundamental article secures the right of trial by jury in all cases at the common law, and which by express statute declares that suits in equity shall not be sustained in any case where a plain, adequate and complete remedy may be had at law, as has always heretofore been considered the case in cases of libel and slander, we do not think that we would be justified in extending the remedy of injunction to such cases. The application for an injunction must be denied, and the ancillary bill is dismissed with costs."

In Raymond v. Russell, 143 Mass. 295, a bill in chancery was filed to restrain the proprietors of a mercantile agency from publishing the name and business standing of the complainant. There was no charge that the representations were false, but the court states the rule in these words :

" It is not within the jurisdiction of a court of equity to restrain, by injunction, representations as to the character and standing of the plaintiff, or as to his property, although such representations may be false, if there is no breach of trust or of contract involved."

Appellees quote at length from and rely largely upon the case of Emack v. Kane, 34 Fed. Rep. 46. That was a case in chancery wherein it was sought, as in the case at bar, to restrain the distribution of a circular. The court there held that a court of chancery would entertain jurisdiction, and issued an injunction. But the circular complained of in that case was very different from the circular now before this court. Judge Blodgett in his opinion in that case uses this language (p. 50):

" The *gravamen* of this case is the attempted intimidation by defendants of complainant's customers by threatening them with suits which defendants did not intend to prosecute; and this feature was not involved in Kidd v. Horry."

Neither is that feature involved in the case at bar. Here there is no threat or attempted intimidation. In most, if not all of this class of cases, where a court of chancery has entertained jurisdiction, the *gravamen* has been, as stated by Judge Blodgett, different from that of the case of Kidd v. Horry.

The case of Everett Piano Co. et al. v. Bent, 60 Ill. App. 373, is in the question involved, very similar to the case at bar. In some respects the circular involved in that case was stronger against the party who issued it, than the one now before this court. It was there held that a court of chancery would not entertain jurisdiction. Mr. Justice Waterman, speaking for the court, said (p. 377):

"That a court of equity can not, under its common law powers, by injunction restrain the publication of a mere libel, seems to be most in accordance with the authorities in this country, as well as in England. Boston Dietite Co. v. Florence Mfg. Co., 114 Mass. 69; High on Injunctions, Sections 1015–1093."

We fully concur in the statement that the rule as expressed by Mr. Justice Waterman is in accord with the authorities in this country, and also with the authorities in England prior to and when not controlled by the Judicature Act of 1873.

The circular complained of in the case at bar is not more or greater than a "mere libel." (As to whether it is a libel we express no opinion.)

It follows from what we have said and the cases cited, that we are of opinion that a court of chancery has no jurisdiction to enjoin the distribution of the circular in question.

The judgment of the Superior Court is reversed and the cause remanded. That court will enter an order dissolving the preliminary injunction. Reversed and remanded.